# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 14-1009V
(Not For Publication)

* * * * * * * * * * * * * * * * * * * * * * * * *
\*
ISAAC BORD and                     \*
ELISA PAGANO,                       \*
parents of A.B., a minor,           \*            Filed: December 5, 2016
                                      \*
              Petitioners,          \*
                                      \*            Vaccine Act Fees and Costs
                                      \*
               v.                        \*
                                      \*
SECRETARY OF HEALTH AND        \*
HUMAN SERVICES                 \*
                                      \*
              Respondent.         \*
* * * * * * * * * * * * * * * * * * * * * * * * *

*Carol L. Gallagher*, Linwood, NJ, for Petitioners.
*Heather Pearlman*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING ATTORNEYS' FEES AND COSTS

**HASTINGS,** *Special Master*.

      In this case under the National Vaccine Injury Compensation Program (hereinafter "the Program"[1]), Petitioners seek, pursuant to 42 U.S.C. § 300aa-15(e)(1), an award for attorneys' fees and other costs incurred in attempting to obtain Program compensation. After careful consideration, I have determined to grant the request in substantial part.

---

[1] The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 *et seq.* (2012 ed.). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. (2012 ed.). The statutory provisions defining the Program are also sometimes referred to as the "Vaccine Act."

1

# I

## BACKGROUND LAW CONCERNING ATTORNEYS' FEES AND COSTS AWARDS

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases. §300aa–15(e)(1). This is true even when a petitioner is unsuccessful on the merits of the case -- in such cases, a special master "may" award fees, if the petition was filed in good faith and with a reasonable basis. *Id*. "The determination of the amount of reasonable attorneys' fees is within the special master's discretion." *Saxton v. HHS,* 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. HHS,* 609 F.3d 1372, 1377 (Fed. Cir. 2010).

Further, as to all aspects of a claim for attorneys' fees and costs, the burden is on the *petitioner* to demonstrate that the attorneys' fees claimed are "reasonable." *Sabella v. HHS,* 86 Fed. Cl. 201, 215 (2009); *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *Rupert v. HHS,* 52 Fed. Cl. 684, 686 (2002); *Wilcox v. HHS,* No. 90–991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The petitioner's burden of proof to demonstrate "reasonableness" applies equally to *costs* as well as attorneys' fees. *Perreira v. HHS,* 27 Fed. Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed. Cir. 1994).

One test of the "reasonableness" of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure. *Riggins v. HHS,* No. 99–382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd by unpublished order* (Fed. Cl. Dec. 10, 2009), *aff'd,* 406 Fed. App'x. 479 (Fed. Cir. 2011); *Sabella v. HHS,* No. 02–1627V, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008), *aff'd in part and rev'd in part,* 86 Fed. Cl. 201 (2009). In this regard, the United States Court of Appeals for the Federal Circuit has noted that:

> [i]n the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Saxton*, 3 F.3d at 1521 (emphasis in original) (quoting *Hensley*, 461 U.S. at 433–34). Therefore, in assessing the number of hours reasonably expended by an attorney, the court must exclude those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434; *see also Riggins*, 2009 WL 3319818, at *4.

The Federal Circuit has also made clear that special masters may rely on their prior experience in making reasonable fee determinations, without conducting a line-by-line analysis of the fee bill, and are not required to rely on specific objections raised by respondent. *See Saxton*, 3 F.3d at 1521; *Sabella*, 86 Fed. Cl. 201, 209 (2009); *see also Wasson v. HHS*, 24 Cl. Ct. 482, 484, 486 (1991), *aff'd,* 988 F.2d 131 (Fed. Cir. 1993) (holding that, in determining a reasonable number of hours expended in any given case, a special master may rely on her experience with the Vaccine Act and its attorneys, without basing his decision on a line-by-line examination of the fee application). A unanimous Supreme Court has articulated a similar holding:

> We emphasize, as we have before, that the determination of fees "should not result in a second major litigation." The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation." We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.

*Fox v. Vice*, 563 U.S. 826, 838 (2011) (internal citations omitted).

## II

## PROCEDURAL BACKGROUND

The Petitioners, Isaac Bord and Elisa Pagano, filed this Petition *pro se*, on October 17, 2014, alleging that the influenza vaccine had injured their minor child, A.B. (ECF No. 1, p.1) On October 20, 2014, this case was assigned to Special Master Christian Moran. (ECF No. 3.) During the initial status conference on December 1, 2014, Petitioners reported that they were seeking an attorney to represent them. (ECF No. 9, p. 1.) They were instructed to gather and file the relevant medical records. (*Id*.)

Respondent filed an initial "Rule 4(c) report" on January 13, 2015, noting that Petitioners had not yet filed an adequate description of their claim, or any medical records. (ECF No. 11.)

Petitioners filed a few medical records identified as Exhibits ("Exs.") 1-4, on March 2, 2015. (ECF No. 13.) On March 11, 2015, Special Master Moran convened a status conference to discuss Petitioners' progress toward obtaining and filing all of the relevant medical records. (ECF No. 16.) During that conference, Petitioners were advised to organize the remainder of such medical records guided by the Vaccine Rules and the Program Guidelines. (*Id*.) Petitioners reported that they were still seeking appropriate representation by legal counsel. (*Id*.)

On April 21, 2015, Petitioners filed a motion requesting authorization to substitute Carol L. Gallagher as counsel of record, which was granted. (ECF Nos. 17, 18.) Shortly thereafter, on May 21, 2015, Petitioners' counsel filed additional medical records. (*See* ECF No. 21; Exs. 5-

13.) On May 28, 2015, Special Master Moran convened another status conference, during which Petitioners' counsel indicated their desire to file an Amended Petition that would include all of the vaccinations relevant to their claim. (ECF No. 22.) Petitioners were instructed to file their amended petition, all of the outstanding medical records, and an affidavit concerning damages, by July 27, 2015. (*Id*.) Petitioners requested one enlargement of time to accomplish these tasks, as well as authorization to issue a subpoena to obtain records from one of A.B.'s medical doctors. (ECF Nos. 25, 26.) Both of these requests were granted. (ECF Nos. 27, 28.)

      Petitioners filed an Amended Petition on September 17, 2015, which also implicated the influenza and pneumococcal vaccinations that A.B. had received more recently, as significant aggravators of his original allegedly vaccine-related injury. (ECF No. 31, p. 1.) The Amended Petition also provided further details concerning an array of adverse symptoms that A.B. had allegedly suffered, and descriptions of various medical treatments that he received. (*Id*., pp. 1-3.) By September 22, 2015, Petitioners had filed an extensive affidavit describing their own recollections concerning A.B.'s afflictions (Ex. 19); a damages affidavit (Ex. 20), more medical records (Exs. 14-18, 25), and various items of medical literature (Exs. 21-24). (*See* ECF Nos. 29-33.)

      On October 14, 2015, Respondent filed a supplemental "Rule 4(c) report," which recommended denial of compensation and dismissal. (ECF No. 34, p.1.)

      Special Master Moran convened a status conference on October 23, 2015, to discuss Petitioners' efforts to establish adequate proof that A.B.'s vaccinations had caused his injuries. (ECF No. 36.) As a result of this discussion, Petitioners were directed to obtain specific explanations from their potential expert witness regarding the symptoms of A.B.'s injuries and/or the worsening of his condition (*see* ECF No. 37-1), and to file their expert report by January 21, 2016. (ECF Nos. 36-38.) While preparing their response, Petitioners' counsel continued to gather and file medical records that were relevant to their claims. (ECF Nos. 39-40, 43.)

      On February 29, 2016, this case was reassigned to my docket for further proceedings. (ECF No. 44.) Between November 2015 and April 2016, Petitioners requested and received several enlargements of time to file an expert report that would satisfy the court's instructions. (ECF Nos. 41-42, 46-49.) On April 1, 2016, Petitioners' counsel, Carol L. Gallagher, reported that Petitioners were seeking alternate counsel to represent them. (ECF No. 48.) However, the anticipated substitution of counsel did not occur.

      Petitioners filed a Motion for a Decision to Dismiss the Petition, on May 26, 2016, stating that, based on their investigation of the facts and science supporting their case, they would be unable to prove entitlement to compensation. (ECF No. 50.) I filed a Decision dismissing the

case for insufficient proof, on May 26, 2016. (ECF No. 51.) Judgment entered on June 1, 2016. (ECF No. 53.)

On July 28, 2016, Petitioners filed an application for attorneys' fees and costs related to the litigation of this case. (ECF No. 55.) Respondent filed a Response, on August 2, 2016, objecting to the overall amount of the award requested. (ECF No. 56.) On August 4, 2016, Petitioners filed a Reply to Respondent's objection, along with an Amended Motion for Fees and Costs, which requested additional attorneys' fees related to the time spent formulating their Reply. (ECF Nos. 57 – 58.)

### III

### DISCUSSION

*A. Good faith and reasonable basis*

I note that the medical records of treating pediatric neurologist Dr. Rosario Trifiletti include the observation that A.B. experienced "2 [reactions to] vaccines" and "reacted to vaccines." (Ex. 2, pp. 7-8.) These records were filed by the *pro se* Petitioners on March 2, 2015. (ECF No. 13.) Based on these comments, it certainly seems reasonable for Petitioners to conclude that further investigation of this matter was appropriate.

Further investigation was performed by Petitioners' counsel, Carol L. Gallagher, who sought additional evidence to substantiate their claim. Among the many documents subsequently filed by counsel are the medical records of pediatric immunologist Dr. Harumi Jyonouchi, who recorded that A.B. experienced "[a]dverse reactions to immunization – adverse reactions to pneumovax." (Ex. 8, p. 21, *see also* p. 26.) Further, immunologist Dr. Denis Bamboulis opined that A.B. suffered from an autoimmune deficiency and advised that future vaccinations be avoided due to potential adverse effects. (Ex. 17, p. 1.)

Pursuant to instructions from the then-presiding special master (*see* ECF Nos. 22, 28), Petitioners' counsel filed an Amended Petition and various affidavits. (*See* ECF Nos. 29-6, 29-7, 31.) The efforts of both parties to provide appropriate expert reports were guided by eight pages of instructions from the special master, which carefully elaborated the complex issues that should be addressed. (*See* ECF No. 38-1).

Ultimately, Petitioners concluded that they were unable to gather sufficient evidence to establish vaccine causation of A.B.'s injuries. (Petitioners' Motion for Decision to Dismiss the Petition, ECF No. 50.)  However, after reviewing the medical records of this case, I find that this petition was filed and prosecuted in good faith and with a reasonable basis.  Petitioners have satisfied the statutory requirement for an award of attorneys' fees and costs set forth in §300aa–15(e)(1) of the Vaccine Act.  Respondent also acknowledges that in this case, "the statutory and other legal requirements for an award of attorneys' fees and costs are met." (Respondent's Response to Petitioners' Application, ECF No. 56, p. 2.)

### B. Amount of the award

Petitioners filed an application for an award of attorney's fees and costs ("Application"), on July 28, 2016, requesting a total amount of $67,681.95.  (ECF No. 55, p. 3.)  This total amount represents the following: attorney's fees for 180.5 hours at $350 per hour, amounting to $63,175.00; attorney's costs of $4,106.95; Petitioners' costs of $400.00. (*Id*.)  Petitioners' counsel also filed an Amended Motion for Fees and Costs, on August 4, 2016, which added $2,170.00 to the original request, representing 6.2 hours of attorney's fees (ECF No. 58, p. 3), for time expended by counsel in formulating Petitioners' Reply to Respondent's Response to Petitioners' Application. (*See* Ex. 58-1, p. 15.)

In Respondent's response to the fees application, Respondent noted that in recent months Respondent has elected not to "provide detailed objections to requests for attorneys' fees and costs." (ECF No. 56, p. 3, n. 1.)  Instead, Respondent contended that "[b]ased on a survey of fee awards in similar cases and her experience litigating Vaccine Act claims, respondent asserts that a total reasonable amount for fees and costs in the present case would fall between $13,000.00 and $20,000.00." (*Id*., p. 3.)  To support this contention, Respondent cited three attorney's fees and costs decisions that fall within this proposed range, and requested that the award in this case be reduced accordingly. (*Id*.)  However, Respondent also acknowledged that the U.S. Court of Appeals for the Federal Circuit has "made clear that special masters may rely on their prior experience in making reasonable fee determinations, without conducting a line-by-line analysis of the fee bill, and are not required to rely on objections raised by respondent." (*Id*., p. 2.)

Within that context, I note that Petitioners filed their petition and attempted to litigate their complex claim for about six months, while seeking appropriate legal representation.  Carol L. Gallagher reviewed their filings and agreed to represent them in early 2015.  By the time the case concluded, 28 exhibits had been filed, consisting of over 600 pages (*see* ECF No. 57, p. 2), along with two affidavits, and an Amended Petition.  When counsel completed her investigation of the facts and reached the conclusion that there was no reasonable basis to continue, she advised Petitioners to that effect. (*Id*., p. 3.)  Petitioners subsequently agreed to a dismissal of their claim. (*Id*.)

Ms. Gallagher has represented petitioners in the Vaccine Program and been a member of the U.S. Court of Federal Claims bar since 1995; that is, for more than twenty years. (ECF No.

57, p. 3.) Throughout the billing in this case, from March 2015 to August 2016, Petitioners' counsel billed at a rate of $350 per hour. (*See* ECF No. 58-1.)

A recent survey of attorneys' rates of pay in Vaccine Act cases indicates that attorneys with 20 or more years of experience generally are paid within a range of $300 to $425 per hour. *McCulloch v. HHS*, No. 09-293V, 2015 WL 5634323, *18 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[2] Given the experience of the attorney involved here, I find that $350 per hour is an appropriate payment rate in this case for Carol L. Gallagher during 2015 and 2016.

I also find the costs claimed to be within the range of reasonableness.

As to the number of hours claimed, after examining the record as a whole, and based on my 27 years of experience in Vaccine Act cases, I find the hours to be somewhat high for the services provided.  I will reduce the total number of hours claimed by 15 percent.

## IV

## CALCULATION OF AWARD

Attorney' Fees   $63,175.00 plus 2,170.00 = $65,345 minus $9,801.75   = $55,543.25

Attorney's Costs                                                                   +     4,106.95

                                             Sub-Total                    $59,650.20

Petitioners' Costs                                                                 +       400.00

                                             Total                        $60,050.20

---

[2] Such lawyers who qualify for the same rate as the Washington D.C. forum would receive between $350 and $425 per hour, with the higher end of that range reserved for those with more than 20 years of experience, who perform high quality legal work on Vaccine Act cases. (*McCulloch*, at *19.)

7

## V

## CONCLUSION

For the foregoing reasons, I award Petitioners $59,650.20 for attorneys' fees and costs, in the form of a check made payable jointly to Petitioners and Petitioners' counsel of record.  I also award Petitioners $400.00 for Petitioners' own litigation expenses, in the form of a check made payable to Petitioners.  The Clerk of this Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

/s/ George L. Hastings, Jr.
George L. Hastings, Jr.
Special Master
